**Mamie BRADLEY, Plaintiff,**

v.

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., and its subsidiaries; Arthur Hauspurg, President and Chief Executive Officer; Cornelius J. O'Leary, General Manager, individually and in his representative capacity; John P. Stanley, Division Manager, individually and in his representative capacity; and Andrew J. Polasky, Division Manager, individually and in his representative capacity, Defendants.**

**No. 83 Civ. 7504 (SWK).**

United States District Court, S.D. New York.

March 19, 1987.

---

Owens & Associates, P.C., by Paulette M. Owens, New York City, for plaintiff.

Charles E. McTiernan, Jr., Mary Schuette, Consolidated Edison Co. of New York, Inc., New York City, for defendants.

KRAM, District Judge.

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, *et seq.*,[1] and common law tort principles. Plaintiff alleges race and sex discrimination in employment, intentional infliction of emotional distress, negligence, interference with economic relations, and interference with contractual relations and wrongful discharge. The case is presently before the Court on defendants' motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons outlined below, defendants' motion is granted in part and denied in part.

## FACTS

The following facts are not in dispute. Plaintiff Mamie Bradley ("Bradley"), a black female, was hired by defendant Consolidated Edison of New York, Inc. ("ConEd") in 1966 as a Telephone Account Representative. In 1968, Bradley was named to the position of District Office Account Representative. She was promoted into management to the position of Assistant District Office Manager in 1972. Between 1972 and 1979, Bradley received annual salary increases and was promoted on two occasions to higher paying management titles, including Branch Manager of the East Bronx Branch Office. Bradley was named Branch Manager of the North Bronx Branch Office in 1979, without a salary increase, and remained in that position until 1982. In June 1982, Bradley was removed from that position and given special assignments. She went on disability leave in late August 1982. By April 1983,

---

1. Plaintiff also invokes jurisdiction pursuant to 42 U.S.C. §§ 1983, 1985, but her factual allega- tions do not reflect these statutory provisions.

Bradley had used up all her paid disability leave. ConEd claims her employment ended at that time. However, Bradley contends she still remains an employee of ConEd.

On July 6, 1982, Bradley registered a complaint with ConEd's EEO office; that complaint was never acted upon by ConEd. On August 11, 1982, Bradley submitted a Charge of Discrimination to the Equal Employment Opportunity Commission (the "EEOC").[2] Bradley's EEOC Charge was sent to the New York State Division of Human Rights which referred the charge back to the EEOC for investigation on October 5, 1982, in accordance with Title VII and the work-sharing agreement between these agencies. In July 1983, the EEOC concluded its investigation and issued a "Notice of Right to Sue", which advised Bradley that the EEOC was "terminating any further processing of [her] charge" and that her right to sue would be lost if she did not initiate suit within 90 days from the receipt of such notice. Bradley initiated this action in October 1983, within the mandatory 90 day requirement. Her complaint asserts five causes of action. The first four claims are based on state law theories of (1) intentional infliction of mental distress, (2) negligence, (3) interference with economic relations and (4) interference with concontractual relations and wrongful discharge. The fifth claim is based on Title VII.

Bradley has filed a workers' compensation claim before the New York State Workers' Compensation Board in May 1983.

## DISCUSSION

The standards to be applied by a district court in deciding a motion for summary judgment have been clearly articulated in this Circuit. It is axiomatic that a motion for summary judgment lies only when there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). In considering the motion, this Court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. *Knight v. United States Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985)). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party then has the burden

---

**2.** In her EEOC charge, Bradley alleges

(a) Her reassignment as North Bronx Branch Manager in 1979 encompassed significant increase in responsibilities but no increase in salary;

(b) Prior to her 1979 reassignment she had always received superior ratings; her subsequent lower ratings were unwarranted in relation to other similarly situated employees; one oral evaluation was superior, yet, when reduced to writing it was only satisfactory; and ConEd negligently failed to apply equitably its policies and procedures with respect to management performance appraisals and employee evaluations.

(c) Virtually all her recommendations regarding the North Bronx Branch Office were overruled.

(d) Her superiors conspired to harass and demean her, and the Division Manager of Branch Operations harrassed and discriminated against her on numerous specified occasions.

(e) Her salary was disproportionately low in relation to two subordinates.

(f) She was suspended for five days for charging two calculators to petty cash in an emergency.

(g) She received disparate treatment in relation to male and white employees.

(h) The two special assignments did not utilize her talents, were unwarranted demotions, and will restrict her career advancement; and, because of the physical relocation, she was denied access to staff, files and office materials.

(i) This discrimination has caused her irreparable emotional and physical injury requiring medical treatment and counselling.

of coming forward with "special facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of fact.

Defendants move for partial summary judgment on the grounds that (1) plaintiff's Title VII allegations should be limited to those within the scope of her EEOC charge; (2) plaintiff's Title VII claim should be limited to those events which allegedly occurred within 300 days prior to the filing of her EEOC charge; (3) plaintiff's state tort claims fail to state claims on which relief may be granted; and (4) individually named defendants should be dismissed as separate parties to this action. The Court addresses defendants' assertions *seriatim.*

*Limiting the Title VII Allegations to Those in the EEOC Charge*

■■■ A prerequisite to bringing a Title VII action is the filing of a discrimination charge with the EEOC and obtaining from that agency a "right-to-sue" letter. *Meyer v. MacMillan Publishing Co., Inc.*, 85 F.R.D. 149, 151 (S.D.N.Y.1980) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974)); 42 U.S.C. § 2000e–5(a), (b). The scope of judicial action as to the Title VII claim is then limited by the parameters of the EEOC investigation. *See Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979), *rev'd on other grounds*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). Generally, a court may consider, in addition to the original EEOC charges, those claims "reasonably related" to the EEOC charges. *Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir. 1984) (citing *Kirkland v. Buffalo Board of Education*, 622 F.2d 1066, 1068 (2d Cir. 1980) (per curiam)). Acts which are reasonably related to the EEOC charge include acts which "could reasonably [have been]

expected to grow out of the EEOC charge of discrimination." *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978). Thus, absent the filing of a reasonably related claim with the EEOC, that claim cannot become the basis of the present Title VII claim, *Miller v. International Telephone & Telegraph Co.*, 755 F.2d 20, 25 (2d Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985), because the court lacks subject matter jurisdiction to hear such a claim, *see Almendral*, 743 F.2d at 967.

■■■ Defendants argue that Bradley's EEOC charge contains 28 allegations which substantially correspond to similar allegations contained in paragraphs 6 through 17 and 19 through 23 of Bradley's complaint, but that the remaining allegations of Bradley's complaint are so far outside the purview of matters placed before the EEOC that they are not appropriately addressed as Title VII violations in this action. Plaintiff, on the other hand, appears to argue only that paragraph (m) of her EEOC charge clearly gives notice of the various transactions and occurrences stated in her complaint with respect to plaintiff's cause of action for negligence, which is contained in paragraphs 48 through 55 of her complaint. Paragraph (m) provides

> I believe that Consolidated Edison negligently failed to apply equitably the policies and procedures of the corporation with respect to management performance appraisals and employee evaluations.

Plaintiff's fifth cause of action, the Title VII claim, incorporates all prior paragraphs of the complaint, which include a thirty-two paragraph statement of facts (¶¶ 1–32), a fourteen paragraph claim for intentional infliction of emotional distress (¶¶ 33–46), an eleven paragraph claim for negligence (¶¶ 47–57), a six paragraph claim for interference with economic relations (¶¶ 58–63), and an eight paragraph claim for interference with contractual relations and wrongful discharge (¶¶ 64–71).

As to the statement of facts, defendants acknowledge that paragraphs 6 through 17 and 19 through 23 parallel plaintiff's EEOC

charge. The Court finds the allegations contained in paragraphs 1 through 5 (concerning plaintiff's hiring and work experience at ConEd prior to her reassignment as Branch Manager of the North Bronx Branch Office in 1979), paragraph 18 (concerning plaintiff's hospitalization subsequent to her filing of her EEOC charge allegedly as a result of the discrimination against her), and paragraphs 24 through 32 (concerning events subsequent to the filing of her EEOC charge and prior to her disability leave) to be either reasonably related to the scope of the EEOC charge or reasonably expected to grow out of that charge because the alleged occurrences are all interconnected to that charge. However, as to the state tort claims, the Court finds that plaintiff has failed to include these claims in her EEOC charge. Paragraph (m) of Bradley's EEOC charge simply is too vague and generalized to alert defendants as to the sweeping negligence allegations asserted in the negligence claim in Bradley's complaint. And, Bradley's EEOC charge does not give ConEd any notice of Bradley's intent to raise allegations pertaining to intentional infliction of emotional distress, interference with economic relations, or interference with contract and wrongful discharge. These can only be separate and distinct pendent state law claims. Because the allegations contained in these claims were not part of Bradley's EEOC charge, the Court lacks subject matter jurisdiction to hear them as part of Bradley's Title VII claim. Accordingly, the Court finds that Bradley's Title VII claim encompasses only paragraphs 1 through 32 and 72 through 76 of her complaint.

**3.** Bradley initially submitted her EEOC charge with the EEOC—and not with the state or local agency as required by Title VII—on August 11, 1982. Accordingly, the EEOC forwarded the charge to the New York State Division of Human Rights (the "DHR"), in accordance with its agreement with the DHR. On October 5, 1982, less than 60 days after the charge was forwarded to it, the DHR advised ConEd that the charge was being returned to the EEOC for processing. The Supreme Court has determined that it is the date upon which the local agency terminates its proceeding that the charge is deemed filed with the EEOC and from which the 300 days is mea-

*Limiting the Title VII Allegations to those Occurring within 300 Days of the Filing of the EEOC Charge*

■ Subsection 706(e) of Title VII gives a deferral state claimant, as is plaintiff here, 300 days to file an administrative charge. 42 U.S.C. § 2000e–5(e). Timely filing is a prerequisite to bringing suit in federal court, although the requirement may be excused on equitable grounds. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

Defendant argues that any discriminatory acts which occurred prior to December 9, 1981, i.e., 300 days prior to the filing of Bradley's EEOC charge with the EEOC,[3] are time-barred. Plaintiff contends in response that all actions beginning with her being named Branch Manager of the North Bronx Branch Office in February 1979 and continuing until the present time are part of a continuing violation as to which the limitations period has not yet run.

Bradley's complaint recites specific examples of the alleged discriminatory treatment beginning in February 1979. Although Bradley fails to assign specific dates to each alleged act, where there is a "reasonable ascertainable date on which the act occurred, that is the day on which the statute began to run," notwithstanding that plaintiff may still feel some effects as a result of the prior discriminatory act. *Malarkey v. Texaco, Inc.*, 559 F.Supp. 117, 121 (S.D.N.Y.1982) (citations omitted), *aff'd*, 704 F.2d 674 (2d Cir.1983); *Collins v. Manufacturers Hanover Trust Co.*, 542 F.Supp. 663 (S.D.N.Y.1982). Because Bradley's EEOC charge was filed on October 5, 1982, and because Bradley must al-

sured. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 814–15 n. 16, 100 S.Ct. 2486, 2491 n. 16, 65 L.Ed.2d 532 (1980) ("[A] complainant in a deferral State having a fair employment practices agency over one year old need only file his charge within 240 days of the alleged discriminatory employment practice in order to insure that his deferal rights will be preserved. If a complainant files later than that (but not more than 300 days after the practice complained of), his right to seek relief under Title VII will nonetheless be preserved if the State happens to complete its consideration of the charge prior to the end of the 300-day period.").

lege discriminatory events occurring within the 300 day period preceeding that date, those acts occurring before December 9, 1981, then, could not be considered by the Court absent excuse on equitable grounds.

■ In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court ruled that the timely filing of an EEOC charge is not a jurisdictional prerequisite to bringing a Title VII suit in federal court but rather a requirement subject to waiver, estoppel or tolling when equity requires. Bradley seeks to come within such an exception by claiming that all of the allegedly discriminatory acts are part of a "continuing violation", which delays commencement of the statute of limitations period. The theory of a "continuing violation", however, applies to a continuously maintained discriminatory employment policy. *See Guardians Association of New York City Police Department v. Civil Service Commission*, 633 F.2d 232, 249 (2d Cir.1980), *aff'd*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983); *O'Malley v. GTE Service Corp.*, 758 F.2d 818, 821 (2nd Cir. 1985); *EEOC v. Home Insurance Co.*, 553 F.Supp. 704 (S.D.N.Y.1982).

■ Bradley's claim, in its entirety, is clearly one of "discriminatory *treatment*", and she has alleged no facts to indicate that ConEd maintained a "discriminatory employment *policy*" with respect to minorities or females.[4] *Ghosh v. New York University Medical Center*, 576 F.Supp. 86, 93 n. 24 (S.D.N.Y.1983) (emphasis in original). In other words, a "plaintiff may not circumvent the limitations period merely by labelling an act as a 'continuing' violation. Completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature." *Malarkey v. Texaco, Inc.*, 559 F.Supp. at 121 (quoting *Corbin v.*

*Pan American World Airways*, 432 F.Supp. 939, 944 (N.D.Cal.1977)).

Accordingly, defendants' motion for partial summary judgment as to those alleged discriminatory acts occurring prior to December 9, 1981, is granted.

### Tort Claims

Defendants contend that plaintiff's four causes of action brought under New York State common law principles of tort for intentional infliction of emotional distress, negligence, interference with economic relations and interference with contract and wrongful discharge should be dismissed for failure to state claims on which relief can be granted.

### A. Intentional Infliction of Emotional Distress

■ Plaintiff alleges that defendants, through a course of willful, outrageous and extreme retaliatory conduct for plaintiff's filing of a grievance with ConEd and the EEOC and caused plaintiff to suffer extreme mental and emotional distress as a result. Defendants, on the other hand, contend (1) that plaintiff, in essence, is challenging the course of conduct which allegedly brought about her termination; that New York does not recognize a cause of action for wrongful discharge; and that plaintiff cannot subvert the traditional at-will contract rule by recasting his cause of action in terms of the tort of intentional infliction of emotional distress; and (2) that, in any event, the conduct alleged by plaintiff is insufficient to state a claim as a matter of law.

The gravamen of defendants' first argument is that plaintiff was discharged from ConEd, and defendants have submitted an affidavit demonstrating that plaintiff's retirement benefits were approved for payment and that such payments would not have been approved unless plaintiff actually had been separated from the service of ConEd by reason of disability. Plaintiff

---

**4.** Indeed, although Bradley summarily claims that she "ha[s] received disparate treatment in comparison to other male and white employees in the same position and status," she specifically states that her "transfer and placement was [sic]

effected in express violation of the policies and personnel procedures promulgated by the Department of Personnel of Consolidated Edison of New York." Complaint ¶¶ 13, 16.

contends that she has not yet been officially terminated. Although defendants' affidavit appears dispositive as to the issue of plaintiff's termination, the Court need not reach this issue because the Court finds merit in defendants' second argument and grants summary judgment to defendant on that ground.

The New York courts have adopted the rule set out in the Restatement that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303, 448 N.E.2d 86, 90, 461 N.Y.S.2d 232, 236 (1983) (quoting Restatement (Second) of Torts § 46(1) (1966); *Fischer v. Maloney*, 43 N.Y.2d 553, 557, 373 N.E.2d 1215, 1217, 402 N.Y.S.2d 991, 992–93 (1978). Comment d to that section provides that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable." *Id.*

Defendants' conduct "must consist of more than mere insults, indignities and annoyances and must be so shocking and outrageous as to exceed all reasonable bounds of decency." *Nestlerode v. Federal Ins. Co.*, 66 A.D.2d 504, 507, 414 N.Y. S.2d 398, 400 (4th Dep't 1979). *See also Moye v. Gary*, 595 F.Supp. 738, 739 (S.D.N. Y.1984); *Greenfield v. Kanwit*, 546 F.Supp. 220, 225 (S.D.N.Y.), *aff'd*, 714 F.2d 113 (2d Cir.1982).

The alleged negative evaluations, harassment, job assignments and disparaging statements of which plaintiff complains, however, are insufficient as a matter of law to state a claim for intentional infliction of emotional distress under the Restatement standard. *See, e.g., Moye v. Gary*, 595 F.Supp. at 738–39 (criticism of job performance, insults and indignities insufficient to state such a claim); *Brink's Inc. v. City of New York*, 533 F.Supp. 1123, 1125 (S.D.N.Y.1982) (allegations of unfair demotion, harrassment and verbal abuse insufficient to state such a claim); *Murphy*

*v. American Home Products Corp.*, 58 N.Y.2d at 298, 448 N.E.2d at 88, 461 N.Y. S.2d at 234 (termination in a viciously insulting manner designed to embarrass and humiliate plaintiff insufficient to state such a claim).

Accordingly, defendants' motion for summary judgment as to plaintiff's claim for intentional infliction of emotional distress is granted.

## B. *Negligence*

 Plaintiff, in her third cause of action, alleges that defendants committed the tort of negligence by not instituting and following policies to prevent specified discriminatory conduct which allegedly injured her. Complaint ¶¶ 47–57.

Defendants contend that plaintiff's negligence claim must be dismissed because Sections 10 and 11 of the New York Workmen's Compensation Law provides the exclusive remedy for unintentional employment related injuries. Plaintiff, on the other hand, argues that the Workmen's Compensation Law is not the sole and exclusive remedy where plaintiff's injury is not an accidental injury.

Section 10 provides that "[e]very employer subject to this chapter shall ... secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of employment without regard to fault as a cause of the injury ..." N.Y. Work.Comp.Law § 10 (McKinney Supp. 1987). "It is well recognized that the compensation statute was designed to provide a swift and sure source of benefits to the injured employee but the price for these secure benefits is the loss of the common law tort claim in which greater benefits might be obtained." *O'Rourke v. Long*, 41 N.Y.2d 219, 222, 359 N.E.2d 1347, 1350, 391 N.Y.S.2d 553, 557 (1976); N.Y.Work. Comp.Law § 11 (McKinney Supp.1987). *See Brinkman v. Buffalo Bills Football Club*, 433 F.Supp. 699, 702 (W.D.N.Y.1977).

Plaintiff, in fact, has filed a claim for workmen's compensation and does not allege that such compensation has not been

secured.[5] Further, plaintiff's argument that her injury was not accidental and thus falls under an exception to the statute is meritless as negligence by its very definition cannot be intentional.

Accordingly, defendants' motion for summary judgment as to plaintiff's second cause of action for negligence is granted.

### C. *Interference with Economic Relations*

Plaintiff alleges that ConEd (1) negligently failed to apply equitably the policies promulgated by its personnel department, (2) failed to provide a complaint resolution forum to resolve plaintiff's grievances, and (3) wrongfully, intentionally and negligently terminated her. Complaint ¶¶ 60–62. Plaintiff further alleges that this outrageous conduct caused permanent damage to her personal and professional reputation and consequently to her ability to earn a livelihood in her career. Complaint ¶ 63.

■ Plaintiff's cause of action for interference with economic relations fails to state a claim on which relief may be granted. If plaintiff is alleging that ConEd interfered with her job prospects with ConEd, that cause of action must fail because plaintiff must show, *inter alia,* "defendant's interference with business relations existing between the plaintiff *and a third party.*" *Strapex Corp. v. Metaverpa N.V.,* 607 F.Supp. 1047, 1050 (S.D.N.Y. 1985) (quoting *Martin Ice Cream Co. v. Chipwich, Inc.,* 554 F.Supp. 933, 945 (S.D. N.Y.1983)) (emphasis added). ConEd, of course, cannot be both the defendant and the third party.

■ If, on the other hand, plaintiff is alleging the tort of interference with an economic relationship with a third party, then plaintiff is required to establish defendants' interference with a specific prospective or actual contractual relationship with that third party. *Bunch v. Arctec International Corp.,* 559 F.Supp. 961, 969 (S.D.N.Y.1983). "[E]ven in its most liberal

formulation, the relationships must be specified, as must the defendants' knowledge and the interference." *Burns Jackson Miller Summit & Spitzer v. Lindner,* 88 A.D.2d 50, 72, 452 N.Y.S.2d 80, 93 (2d Dep't 1982), *aff'd,* 59 N.Y.2d 314, 451 N.E.2d 459, 464 N.Y.S.2d 712 (1983). Plaintiff fails to specify either the specific relationship interfered with or defendants' knowledge of it.

Accordingly, plaintiff fails to state a cognizable claim for interference with economic relations, and defendants' motion for summary judgment as to this claim is granted.

### D. *Interference with a Contractual Relationship and Wrongful Discharge*

■ Plaintiff, in her fourth cause of action for interference with a contractual relationship and for wrongful discharge, alleges that, by various actions, ConEd interfered with an implied employment contract with her and wrongfully discharged her.

■ Defendants rightly contend that, inasmuch as ConEd is a party to plaintiff's alleged employment contract, the tort of interference with a contract, which is available only against third parties, cannot lie. *See, e.g., Bunch v. Arctec International Corp.,* 559 F.Supp. at 969; *Warner Bros. Pictures, Inc. v. Simon,* 21 A.D.2d 863, 863, 251 N.Y.S.2d 70, 71 (1st Dep't 1964) (per curiam), *aff'd,* 15 N.Y.2d 836, 205 N.E.2d 869, 257 N.Y.S.2d 947 (1965). Nor can the various individually-named defendants properly be charged with this tort, for there is no allegation that any of these defendants acted outside the scope of his authority as an agent of ConEd, and it is well settled that in such circumstances "an agent cannot be held liable for inducing his principal to breach a contract with a third person ..." *Kartiganer Associates, P.C. v. Town of New Windsor,* 108 A.D.2d 898, 899, 485 N.Y.S.2d 782, 783–84 (2d Dep't),

---

**5.** In the event that payment of compensation is not secured, the employee may nevertheless elect to claim compensation or, at the employee's option, maintain a plenary action in the courts for damages. *O'Rourke v. Long,* 41 N.Y.2d at 222, 359 N.E.2d at 1350, 391 N.Y.S.2d at 557; N.Y.Work.Comp.Law § 11 (McKinney Supp.1987).

*appeal dismissed mem.*, 65 N.Y.2d 925 (1985).

■ Furthermore, there is no cause of action in New York for wrongful discharge. *Murphy v. American Home Products Corp.*, 58 N.Y.2d at 303, 448 N.E.2d at 90, 461 N.Y.S.2d at 236. Accordingly, defendants' motion for summary judgment as to plaintiff's fourth cause of action for interference with contract and for wrongful discharge is granted.

## Individually Named Defendants

■ Subsection 706(f)(1) of Title VII provides that "a civil action may be brought against the respondent named in the [EEOC] charge ..." 42 U.S.C. § 2000e–5(f)(1). In her EEOC charge, Bradley named as defendants ConEd, Cornelius O'Leary, General Manager, John P. Stanley, Division Manager, Andrew J. Polasky, Division Manager, Edward T. Quinn, Division Manager, and Arthur Hauspurg, President and Chief Executive Officer. Plaintiff has named these same defendants in this suit. However, here, Bradley has also named O'Leary, Stanley, Polasky and Quinn in their individual capacities.

Defendants argue that Bradley has no right to proceed against O'Leary, Stanley, Polasky and Quinn in their individual capacities on her Title VII claim. The Court agrees. Those defendants, as individuals, are neither employers nor agents thereof within the purview of Title VII. 42 U.S.C. § 2000e(b). They were employed by ConEd as employees and at all times were acting within the scope of their authority for the acts complained of. Those acts should not now be considered as the basis for individual liability under Title VII.[6] *Women in City Government United v. City of New York*, 515 F.Supp. 295, 299 (S.D.N.Y.1981).

■ Defendants further argue that no purpose is served by naming the individual defendants separately in their representative capacities because ConEd alone is a fully adequate defendant. Defendants' argument is without merit. Title VII pro-

vides Bradley the right to sue those respondents named in her EEOC charge. 42 U.S.C. § 2000e–5(f)(1). She has done no more nor less and her complaint as to these defendants in their representative capacities should stand.

Accordingly, defendants' motion for summary judgment dismissing the complaint as to defendants O'Leary, Stanley, Polasky and Quinn in their individual capacities is granted. Defendants' motion for summary judgment dismissing the complaint as to defendants Hauspurg, O'Leary, Stanley, Polasky and Quinn in their representative capacities is denied.

## Amending the Complaint

■ Plaintiff also requests that she be allowed to amend her complaint to assert jurisdiction under 42 U.S.C. § 1981, as such claim has merit and is governed by a three year statute of limitations, and to include a cause of action for prima facie tort.

On April 4, 1986, Theodore Oshman, Esq., appeared as counsel on behalf of plaintiff at a status conference before this Court and represented that he had been substituted as plaintiff's attorney of record. Oshman had not submitted a substitution of counsel at that time, and, to date, still has not done so. At that conference, the Court granted plaintiff leave to amend her complaint to assert new claims and provided her two weeks within which to do so. At the time of the next status conference on May 9, 1986, more than a month after the Court granted leave to amend, plaintiff still had not submitted an amended complaint, and the Court determined that it would consider defendants' motion to dismiss as it stood at that time and that an amended complaint was untimely.

Accordingly, plaintiff's untimely request to amend her complaint at this time is denied.

## CONCLUSIONS

Defendants' motion for partial summary judgment pursuant to Rule 56 of the Feder-

---

**6.** Were the Court not to dismiss Bradley's state tort claims, suit against these defendants in their individual capacities may be entirely proper.

al Rules of Civil Procedure is granted to the extent that (1) the Title VII claim is limited in scope to paragraphs 1 through 32 and 72 through 76 of the complaint, (2) the Title VII claim is limited to those events occurring within 300 days of the filing of the EEOC charge, which is December 11, 1982, (3) the tort claims, Counts One through Four of the Complaint, are dismissed, and (4) defendants O'Leary, Stanley, Polasky and Quinn are dismissed from this suit in their individual capacities. In all other respects, defendants' motion is denied. Plaintiff's request to amend her complaint is denied.

SO ORDERED.